321 So.2d 650

**Lou Ella CHAMBERS, as Administratrix of the Estate of Terry Chambers, Deceased**

**v.**

**Emil BUETTNER et al.**

**SC 1161.**

Supreme Court of Alabama.

Nov. 13, 1975.

Stephen K. Griffith and J. David Knight, Cullman, William W. Smith, Birmingham, for appellant.

Ralph Bland, and Finis E. St. John, Cullman, Clarence L. McDorman, Jr., Birmingham, for appellees.

**10**

EMBRY, Justice.

Appeal from judgment on directed verdict in favor of defendants in a wrongful death action arising out of a fire allegedly caused by a faulty electrical system. Motion for a directed verdict was granted at the close of plaintiff's case.

Plaintiff/appellant is Lou Ella Chambers, administratrix of the estate of Terry Chambers. Defendants/appellees are Alene T. Buettner, administratrix of the estate of Emil Buettner,[1] also d/b/a Buettner's Paint and Hardware Company, and the Utility Board of the City of Cullman (The Cullman Power Board).

There are three issues for decision: (1) Did Chambers offer a scintilla of evidence upon which reasonable men could differ which would support her cause of action against either the Cullman Power Board or Buettner? (2) Did the trial judge commit prejudicial error in refusing to allow Chamber's expert witness to testify as to what sections of the National Electric Code was violated by the defendant's electrical system? (3) Did the trial judge abuse his discretion in refusing to allow Chambers to recall a witness?

On Saturday, 15 July 1973, Terry Chambers visited the apartment of Wallace Logan and James Holmes, tenants of Buettner. The apartment was located over Buettner's Paint and Hardware Store. Emil Buettner was the owner and landlord. Terry Chambers and others who were at the apartment were listening to music and drinking beer. Sometime during the evening Chambers fell asleep on a couch in the living room of the apartment. During the early morning hours of Sunday a fire started in the building and spread to the apartment. When the fire was extinguished, Terry Chambers' body was discovered under a bed in the apartment bedroom.

In an amended complaint,[2] plaintiff alleged that Emil Buettner was under a duty to rent the apartment in a reasonably safe condition for the protection of persons who were invited to come to the apartment. It further alleged Buettner violated this duty by negligently renting the premises in an unsafe or defective condition. The complaint also alleged the Cullman Power Board violated a duty to members of the public who would rightfully be upon the

---

1. Emil Buettner died while the case was pending. This action was revived against his administratrix prior to trial.

2. A third defendant, Cecil Langley, the electrician who installed the system at Buettner's Store, was dismissed as a party defendant upon motion by plaintiff.

property by negligently furnishing electrical power service to the apartment when the apartment electrical system was unfit to receive such service.

The tendencies of the evidence showed: the fire originated in an electrical conduit which ran from meter boxes on the outside of the building to a fuse panel box in the upstairs hallway of the building; that box served a meeting hall which Buettner rented to a labor union; precise point of origin of the fire was in the conduit several inches below the fuse box; the insulation on the wires inside the conduit box broke down; this caused electricity to arc from the wire to the conduit; the intense heat generated by this arcing melted a hole in the conduit and caused the plywood wall behind the conduit to ignite.[3] There was some evidence that the outside meter boxes, the conduit, and the fuse panel box were improperly grounded. Such an improper grounding would allow arcing to continue instead of overloading the circuit and blow the fuses to shut off electrical power.

Further tendencies of the evidence were: the meter box on the outside of the building in which the apartment was located was improperly grounded; the supplier of electricity (Cullman Power Board) connects service at this box; visual inspection of the outside meter box and the electrical conduits originating from that box and entering the building should have indicated to the serviceman that the system as a whole was defective, therefore Chambers asserts that the Cullman Power Board knew or *should have known* that the system was defective, and power should not have been supplied to the building.

### The Directed Verdict For The Cullman Power Board

█ Chambers claims the Power Board committed actionable negligence in supplying electricity to a defective electrical system. The duty of a supplier of electricity to premises wholly owned and controlled by the recipient of service is well settled. A supplier who merely furnishes electricity is not responsible for defects in the system to which electricity is supplied. It is under no duty to inspect the system to which electricity is supplied. The duty of the supplier ends when the connection is properly made, when the supplier has no control over the premises, and the supplier is without *actual knowledge* of any defective or dangerous condition. *City of Decatur v. Parham,* 268 Ala. 585, 109 So.2d 692 (1959). See also *Chilton Butane Gas, Inc. v. Marcus,* 289 Ala. 292, 267 So.2d 140 (1972).

> "Until notice is *brought home* to the generating company that the distribution system of its customer is out of repair, so as to endanger life or property, the * * * [supplier] has the right, reasonably and justly so, to assume that the * * * [customer] will maintain proper equipment to receive and distribute the current. (citation omitted)" (emphasis added) *Johnson v. Alabama Power Co.,* 230 Ala. 91, 94, 159 So. 695, 698 (1935)

█ If, on the other hand, the supplier of electricity also undertakes to install wiring, parts of the wiring system, or electrical appliances it is responsible for *constructive* knowledge of defects or insufficiences which present potential hazards. *Alabama Power Co. v. Emens,* 228 Ala. 466, 153 So. 729 (1934). Under the facts, disclosed by the evidence, in this case the Power Board could be liable only if it had actual knowledge of any defects in the electrical system to which it supplied electricity. The evidence was that the serviceman of Cullman Power Board who made the service connection to the meter box of the Buettner premises observed the box to

---

3. Buettner and the Power Board attempted to elicit testimony that the fire originated in the apartment. However *no* evidence was presented which would support this hypothesis.

be grounded. He was under no duty, under the evidence in this case, to further inspect as to the sufficiency of the grounding.

Careful review of the evidence, viewed most favorably to plaintiff Chambers, fails to turn up a *scintilla* to the effect that any agent of the Power Board had actual knowledge of any defect or insufficiency in the Buettner premises electrical system. Directing verdict for the Power Board was without error.

### The Directed Verdict For Alene Buettner

Chamber's complaint alleged Buettner had a duty to rent the premises in a reasonably safe condition for the protection of members of the public invited on the premises by the tenant; that Buettner negligently violated this duty owed to Terry Chambers who was visiting Buettner's tenants on the night of the fire.

■■ The general rule of law with respect to guests of tenants is well settled. The landlord, in the absence of a covenant to repair, is liable only for latent defects, known to him at the time of the leasing, and which are concealed from the tenant. *Davenport v. Bonner,* 275 Ala. 131, 152 So.2d 678 (1963). There was no proof in this case either that Buettner had agreed to make any needed repairs to the premises, a part of which were rented to Chambers' hosts on the fateful occasion, or that Buettner knew of and concealed any latent defect in the premises relating to the electrical system.

Chambers claims Buettner's liability can be properly bottomed on the rule of law with respect to injury to strangers caused by a defect in rented premises as expressed in *Great Atlantic and Pacific Tea Co. v. Traylor,* 239 Ala. 497, 195 So. 724 (1940). The instant case clearly is within the ambit of the rule of liability of landlord to tenant and his privies rather than the rule of liability of landlord to strangers.

Chambers further asserts that she was entitled to have her case submitted to the jury on the theory that the offending conduit ran to *a panel box which served a union hall* in the premises; that the conduit and panel box therefore were not part of the premises rented to Logan and Holmes (tenants of Buettner and invitors of decedent Chambers) hence in the exercise of reasonable care Buettner could and should have discovered the defect or insufficiency in the grounding of the conduit and owed a duty to decedent Chambers to correct any defect or insufficiency.

■ This theory must fail even if we assume, arguendo, that any defect or insufficiency present was "a dangerous condition" such as would invoke the rule set out in *Pearce v. Sloss-Sheffield Steel & Iron Co.,* 211 Ala. 639, 101 So. 585 (1924). The rule as established in that case is also embodied in Restatement (Second) of Torts, § 361 (1965):

> "A possessor of land who leases a part thereof and retains in his control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care
>
> (a) could have discovered the condition and the risk involved, and
>
> (b) could have made the condition safe."

The two principal reasons the theory advanced by Chambers, last referred to, will not operate under the rule set out in the Restatement to permit a jury to pass on the liability of Buettner to Chambers are: (A) There was no evidence that Buettner retained control over that portion of the premises where the conduit was located that may have been insufficiently grounded. (B) There was *no evidence* that Buettner could have discovered the condition *and the risk involved.* As to B some evidence would be necessary which showed at least a rudimentary knowledge on the

part of Buettner of proper methods of electrical wiring systems, grounding etc. so that any discoverable condition that existed would have alerted him to a risk of physical harm to anyone lawfully on the premises.

As is well known, a motion for a directed verdict at the close of the plaintiff's case tests the sufficiency of the plaintiff's evidence to entitle the claim for relief to be submitted to the jury for decision.

"* * * If a trial judge decides there is not a scintilla of evidence upon which the jury could reasonably reach a verdict * * * he can direct the verdict without submitting the credibility of the witnesses to the jury if their testimony is uncontradicted and unimpeached. * * *" *Alabama Power Co. v. Taylor,* 293 Ala. 484, 306 So.2d 236 (1975).

The trial and appellate courts must view the evidence in the most favorable light to the party against whom the motion was made. *Alabama Power Co. v. Taylor,* supra; 5A Moore's Federal Practice, ¶ 50.-02[1], at 2325 (1975); in this case in the most favorable light to Chambers. Thus viewed the evidence was not sufficient to amount to *a scintilla* upon which the jury could reasonably reach a verdict against either the Power Board or Buettner.

### Expert Opinion As To Violations Of Electrical Code

During trial Chambers asked an expert witness the following question:

"Now, with reference to the grounding system and the connection as it existed as you saw it on September the 1st, and I think you said it appeared to have been in the same condition for a long time, does that system violate any specific paragraphs or sections of the National Electrical Code?"

Objection to this question was properly sustained. *Alabama Power Co. v. Williams,* 222 Ala. 75, 130 So. 788 (1930); 7 Wigmore on Evidence, § 1955, at 85–86 (1940).

### Discretion Of The Trial Court

Chambers attempted to recall Cecil Langley, the electrician who installed the electrical system in Buettner's store. The Cullman Power Board objected.

"THE COURT: I am going to sustain any questions to him, it is in rebuttal, I am assuming, you have nothing to rebutt (sic) at this time."

Chambers made no offer of proof as to what he intended to show by recalling Langley nor did he attempt to disabuse the court of the assumption that the witness would be used merely in rebuttal. Both parties recognize that the right to recall a witness rests within the discretion of the trial court. The trial court did not abuse that discretion in this case.

There were no errors in the trial of this action which require reversal.

Affirmed.

BLOODWORTH, MADDOX, FAULKNER and ALMON, JJ., concur.