This is a wrongful death action in which the personal representative, Steve Wilson Hilliard, sued the City of Huntsville Electric Utility Board ("Utility Board"), alleging negligence and/or wantonness and nuisance. The issue presented is whether the trial court erred in entering a summary judgment for the Utility Board.
Hilliard, as personal representative of the estate of his deceased wife, Darlene Cobb Hilliard, and on behalf of his deceased children, filed this wrongful death action claiming that the negligent or wanton conduct on the part of the Utility Board caused an electrical fire that resulted in the death of his wife and two children. We conclude that Hilliard presented sufficient evidence to submit his case to the jury, and, therefore, we reverse the judgment of the trial court, and remand for action consistent with this opinion.
Hilliard and his family resided in one apartment of a converted residential quadraplex located at 922 Meridian Street in Huntsville, Alabama. The quadraplex had been formerly used for commercial and residential purposes, and had been converted by Philip Kromis, the owner, to four residential units. As part of the conversion, Kromis hired Landman Electric Company ("Landman") to install needed additional interior wiring, and he requested that the Utility Board transfer an existing single-meter, 200-ampere, overhead electrical service to a four-meter, 400-ampere, underground service. A Utility Board employee prepared a work order for the change requested by Kromis, and a work crew installed the four-meter underground service. However, at Kromis's request, the work crew did not disconnect the existing single-meter overhead service.
Sometime thereafter, an electrical fire broke out in the apartment building. Hilliard's wife and two children died in the fire. Hilliard sued Kromis, Landman, the City of Huntsville, and the Utility Board, alleging that they had wrongfully caused the death of his family. Hilliard settled with both Kromis and Landman, and the trial court entered a judgment on the pleadings for the City; that judgment was affirmed by this Court in Hilliard v. City of Huntsville,585 So.2d 889 (Ala. 1991).
The Utility Board filed a motion for summary judgment and made a prima facie showing that it had not been negligent or wanton and that it had not created a nuisance. The trial court granted the motion. Hilliard appeals.
Hilliard asserted two claims against the Utility Board: (1) negligence and/or wantonness associated with the Board's connection and/or failure to disconnect the electrical services at issue, and (2) nuisance. Hilliard alleged that the Utility Board was negligent and/or wanton in connecting the four-meter, underground electrical service without first disconnecting the single-meter, overhead electrical service. Hilliard's principal contention is that the Utility Board's actions (i.e., connecting the four-meter service, and failing to disconnect the single-meter service) violated various safety standards promulgated by the National Electrical Code ("the NEC") and the expressed policy of the Utility Board itself. Further, he points out that a summary judgment is rarely appropriate in a negligence action, and argues that the summary judgment was not appropriate here.
Additionally, Hilliard asserts that the Utility Board's actions created a nuisance as defined by Ala. Code 1975, §6-5-120; that is, Hilliard argues that the Utility Board's actions caused a dangerous condition that brought about "hurt, inconvenience [and] damage to another [i.e., his family]." Id. *Page 1110 
 Our Standard of Review
Because we are dealing with a summary judgment, our review isde novo. Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). That is, we must examine all the evidence that the trial court had before it in making its determination. Id. The two-tiered standard of review has been repeatedly stated: For a summary judgment to be proper, there must be no genuine issue of material fact and the movant must be entitled to a judgment as a matter of law. Ala.R.Civ.P. 56(c), Tripp v. Humana, Inc.,474 So.2d 88 (Ala. 1985). Further, on review of a summary judgment, we must view all the evidence in a light most favorable to the nonmovant, and we must entertain all reasonable inferences from the evidence in favor of the nonmovant. Fincher v. RobinsonBros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). See, also, Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
The movant must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. Fincher, 583 So.2d at 257. If this showing is made, the burden then shifts to the nonmovant to rebut the movant's prima facie showing by presenting "substantial evidence" to create a genuine issue of material fact. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala. Code 1975, § 12-21-12, West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
In the case at bar, both sides submitted briefs to the trial court arguing their respective positions and excerpting the relevant deposition and affidavit testimony in support of their positions. The Utility Board met its burden by a showing that the facts of the case were largely undisputed[1] and that its actions had not caused the fire. Also, the Utility Board claimed that it owed no duty to the Hilliards, citing Chambersv. Buettner, 295 Ala. 8, 321 So.2d 650 (1975). Additionally, the Board claimed substantive, municipal immunity as a bar to Hilliard's recovery.[2]
To rebut the Utility Board's prima facie showing, Hilliard presented excerpted deposition and affidavit testimony from various lay and expert witnesses. We conclude *Page 1111 
that Hilliard presented substantial evidence supporting all the requisite elements of a prima facie case of negligence,[3] thereby rebutting the Utility Board's prima facie showing on the motion for summary judgment. As to the nuisance count, we conclude that Hilliard's proffered evidence as to his negligence count has sufficient bearing on his nuisance count to allow that issue to be submitted to the jury also.
 The Negligence Count
"The basic elements of any negligence action are: 1) an obligation owed by the defendant to the plaintiff, 2) a breach of the standard of care applicable to that obligation, 3) causation, and 4) damage." Maharry v. City of Gadsden,587 So.2d 966, 968 (Ala. 1991); see also, Rutley v. Country SkilletPoultry Co., 549 So.2d 82 (Ala. 1989). Hilliard presented sufficient evidence that the Utility Board had assumed a duty to use reasonable care in carrying out the work order involved here. See, King v. National Spa Pool Institute, Inc.,570 So.2d 612, 614 (Ala. 1990) (one who originally has no duty to do or refrain from doing something may assume such a duty, in which case he will be expected to act non-negligently). Richard Knox, a Utility Board representative, testified that Utility Board employees complied with NEC requirements in carrying out work orders. Henry O'Quinn, also a Utility Board representative, testified that work crews normally performed work orders as written, and that it was the responsibility of the work crew's foreman to ensure that the work order was carried out as written. Additionally, Knox testified that there was a Utility Board policy against connecting a new electrical service to a building without first disconnecting an existing service. In short, we are convinced that Hilliard sufficiently established a duty.[4]
As to breach of the duty, it was undisputed that the work crew here failed to disconnect the old, single-unit service when the crew connected the new, four-unit service. Because the plaintiff presented sufficient evidence of an assumed duty on the Utility Board's part to perform the work order's mandates with due care, and because there was evidence that the failure to disconnect the old service violated the NEC and the Board's own policy, the undisputed evidence of the work crew's failure to disconnect the old service satisfies the breach of duty element.
As to causation, we note initially that issues of causation are normally properly submitted to the jury, because they are generally dependent on the facts of the case. Fletcher v. Hale,548 So.2d 135 (Ala. 1989). Further, the trial court should displace a jury's consideration of causation issues only where there is a lack of substantial evidence from which the jury could reasonably infer a causal connection between the culpable conduct and the resulting injury. Graham v. Wal-Mart Stores,Inc., 529 So.2d 938 (Ala. 1988). Additionally, conflicts in the evidence militate towards submission of an issue to the jury. See, Land v. Niehaus, 340 So.2d 760 (Ala. 1976); Dean v.Mayes, 274 Ala. 88, 145 So.2d 439 (1962).
Causation analysis consists of two concepts: factual or "but-for" causation, and legal or proximate causation.Springer v. Jefferson County, 595 So.2d 1381 (Ala. 1992). As we stated in Springer:
 "Factual causation, or 'but for' causation, is that part of causation analysis that asks if the complained-of injury or *Page 1112 
damage would have occurred but for the act or omission of the defendant. W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton On Torts § 41 (5th ed. 1984). Proximate or legal causation is that part of causation analysis that asks if 'the act for which the [defendant] is responsible [is] of such a nature that courts of law will recognize it as the [cause] of the injury.' General Motors Corp. v. Edwards, 482 So.2d 1176, 1194 (Ala. 1985). In Alabama, the issue of proximate causation hinges on foreseeability."
595 So.2d at 1383-1384.
Here, there was sufficient evidence of both factual and legal causation. One of Hilliard's expert witnesses, John Frost, testified, "[T]he principal cause [of the fire] was the failure to disconnect the old 200-amp service that they had been requested to disconnect." (R. at 109 and 119; Frost Depo. at 12.) Frost further testified, "This fire was caused by power flowing through the 200-amp circuit breaker to the hot water heater. If there had been no power on that circuit box, this fire would not have occurred." (R. at 110; Frost Depo. at 16.)
Also, there was evidence that injury to the occupants of the quadraplex was reasonably foreseeable on the Utility Board's part. As stated above, there was evidence that the Utility Board did not follow the safety mandates of the NEC regulations, and that the Board's own policy forbade the existence of two main power connections at the same building. Further, there was evidence before the trial court that the purpose of the NEC regulations was to safeguard persons and property from hazards arising from the use of electricity, and that compliance with NEC regulations would result in "an installation essentially free from hazard." (R. at 146.) Based on this evidence, we hold that a factual question for the jury was presented as to whether the resultant injury was foreseeable.
Also, we recognize some conflict in the opinions of the experts on the causation issue. The record shows that Mr. Munger believed that the fire would have occurred regardless of the Utility Board's failure to disconnect the old, 200-ampere service. However, Mr. Frost's statements in the record reveal that he entertained no doubt as to causation. This conflict of expert opinion created a factual question for the jury to decide.
 The Nuisance Count
Hilliard contends that the Utility Board's failure to disconnect the old, 200-ampere service created a "nuisance," as that term is statutorily defined. Further, Hilliard asserts that the same evidence supporting his negligence claim supports his nuisance claim. The Utility Board argues that its conduct in this case was part of its lawfully authorized function, and as such, could not give rise to a nuisance.[5] We conclude that Hilliard's nuisance claim should be submitted to the jury.
Section 6-5-120, Ala. Code 1975, defines nuisance as "anything that works hurt, inconvenience or damage to another." This Court has construed this statute to be declaratory of the common law of nuisance. Lauderdale County Bd. of Educ. v.Alexander, 269 Ala. 79, 110 So.2d 911 (1959). Further, this Court has stated that the "anything" referred to in § 6-5-120
 "may consist of conduct that is intentional, unintentional, or negligent. Indeed, it may even consist of activities that are conducted in an otherwise lawful and careful manner, as well as conduct that combines with the culpable act of another, so long as it works hurt, inconvenience, or damage to the complaining party.
 "This does not mean, however, that the plaintiff is not required to prove against the defendant the elements of legal duty and causal relation between the conduct *Page 1113 
or activity complained of and the hurt, inconvenience, or damage sued for. That which works hurt to another, to satisfy the statutory definition of a nuisance, must comport with the classical tort concepts of duty and causation."
Tipler v. McKenzie Tank Lines, 547 So.2d 438, 440 (Ala. 1989). (Citations omitted.)
Thus, for an action in nuisance under § 6-5-120, Ala. Code, 1975, the plaintiff must show conduct, be it intentional, unintentional, or negligent, on the defendant's part, which was the breach of a legal duty, and which factually and proximately caused the complained-of hurt, inconvenience, or damage. Because we have found, above, that Hilliard presented sufficient evidence on the elements of his negligence claim to submit that claim to the jury, we hold that Hilliard's nuisance claim also should be submitted to the jury.
Based on the foregoing, we reverse the summary judgment entered in favor of the Utility Board, and remand the cause for action consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] For example, it was undisputed that the apartment building in which the Hilliards lived was destroyed by fire and that Hilliard's wife and children died in that fire. Also, it was undisputed that a Utility Board employee issued a work order for the removal of the single-meter service and the installation of the four-meter service. It was also undisputed that the Utility Board's work crew did not remove the single-meter service because Kromis requested them not to do so.
[2] The Utility Board argues that it is an arm or agency of the City of Huntsville, and that as such it should enjoy substantive, municipal immunity to the extent such immunity is available. Our research reveals that this question has never been expressly addressed by this Court. While we are convinced that a utility board's right to substantive, municipal immunity is a question of whether "(1) the entity is created directly by the [municipality], so as to constitute a department or administrative arm of the [municipality], or (2) the entity is administered by individuals who are controlled by public officials and responsible to such officials or [who are controlled by and responsible to] the general public," C. Keating and J. Perkowitz-Solheim, McQuillin's Law of MunicipalCorporations § 53.05b (3d ed., 1984 1991 Cum.Supp.), we do not find it necessary to address this issue in this case. Because Hilliard sued the Utility Board for negligence not involving a negligent inspection, he has effectively circumvented any available substantive immunity. See, Hillis v.City of Huntsville, 274 Ala. 663, 151 So.2d 240 (1963) (asserting that § 11-47-190 allows suits against a municipality only for negligence of an agent, employee, or officer acting within the line and scope of his duty, or for the municipality's failure to remedy a defect in its streets, alleyways, or buildings after notice of such defect or a reasonable time for such notice to be imputed); see also,Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975) (largely abrogating substantive, municipal immunity, and declaring § 11-47-190, Ala. Code 1975, to be the policy of this state regarding municipal immunity); and Rich v. City ofMobile, 410 So.2d 385 (Ala. 1982) (declaring that negligent inspections are not covered by the negligence exception to municipal immunity stated in § 11-47-190), and Hilliard v. Cityof Huntsville, 585 So.2d 889 (Ala. 1991) (following Rich in holding that the City enjoyed substantive immunity for an alleged negligent inspection). See also, Whitworth v. UtilitiesBoard of the Town of Blountsville, 382 So.2d 557 (Ala. 1980).
[3] We note that neither party has addressed the issue of wantonness on appeal; therefore, we deem this issue to be waived.
[4] The Utility Board argues that Chambers v. Buettner, 295 Ala. 8, 321 So.2d 650 (1975), stands for the proposition that no duty existed on the Board's part. Buettner states the very logical proposition that an electrical supplier has no responsibility for the internal wiring of a building to which electricity is supplied, unless the supplier owns or provides internal appliances, or unless the supplier has some other means of control within the interior and has actual knowledge of a defective or dangerous condition. 295 Ala. at 11,321 So.2d at 652-53. Here, Hilliard's allegation is not that the Utility Board negligently supplied electricity, but that the Utility Board was negligent in supplying electricity while there was already a source of electricity in existence, in violation of the written work order, the NEC and the Utility Board's own policy. Hilliard's argument is that the Utility Board assumed a duty to disconnect the old service before connecting the new one.
[5] We are unpersuaded by this argument, for while we agree that "the doing properly of that which the law authorizes does not constitute a nuisance," this does not mean that lawfully authorized acts cannot give rise to a nuisance. Jones v.Newton, 454 So.2d 1345, 1348 (Ala. 1984), citing, Johnson v.Bryant, 350 So.2d 433 (Ala. 1977) (emphasis added). The lawfully authorized act or function must be properly done. Here it is virtually conceded that the lawfully authorized function was not properly done.