423 So.2d 152 (1982)
Patti M. GLENN, etc.
v.
UNITED STATES STEEL CORPORATION, INC., et al.
80-505.
Supreme Court of Alabama.
November 19, 1982.
Francis H. Hare, Jr., Terrell Wynn, Alex Newton, and James J. Thompson, Jr., of Hare, Wynn, Newell & Newton, for appellant.
Bibb Allen of London, Yancey, Clark & Allen, Birmingham, and Reggie Copeland, Jr., of Nettles, Barker & Janecky, Mobile, Robert G. Tate and J. Ross Forman, III of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, for appellee U.S. Steel Corp.
EMBRY, Justice.
The dependent widow of Charlie Glenn, deceased, brought this wrongful death action against United States Steel Corporation and Bucyrus-Erie Company, pursuant to § 25-5-11, Code 1975. Mrs. Glenn appeals from a judgment rendered on a jury verdict in favor of U.S. Steel and Bucyrus-Erie. We affirm.
The facts of the case are as follows: U.S. Steel contracted with J.M. Foster, Inc., to construct an addition to a building at U.S. Steel's Fairfield Works. The contract involved, among other things, the installation of two 42-inch pipelines. Under the terms of this contract, Foster was treated as an independent contractor. U.S. Steel furnished all pipes and valves needed for this project, while Foster furnished the rest of the equipment, materials and labor required for such installation. All materials, including those furnished by U.S. Steel, were placed under Foster's control for storage *153 and installation. U.S. Steel neither directed the manner in which Foster was to perform the work called for by the contract, nor did it provide any supervision on this project. The following provision was included in the contract:
"Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether such machinery, equipment or facilities are the property of or are being operated by, the Contractor, his subcontractors, the Owner or other persons."
Foster had been performing construction work at the Fairfield Works on a continuing basis for approximately 15 years and the supervisors working for Foster knew of the hazards presented by high voltage wires on the property.
Part of the material needed to install the pipelines inside the building were supports for 42-inch pipe. Foster furnished the pipe supports, which were delivered to the job site by the fabricator. U.S. Steel designated certain areas on the premises for storage of Foster's materials and equipment, including an area next to an interior on-premises road known as the scrap haul road. It was along the scrap haul road that Foster's employees unloaded the pipe supports and stored them for future use, because this area was near the building where the pipe supports were to be installed.
Six 44,000-volt electric wires crossed the scrap haul road near where the pipe supports were stored. Warning signs were placed on either side of where the wires crossed over the roadway advising of the danger and the voltage of the lines. Testimony at trial established that the wires were clearly visible at a distance from either end of scrap haul road and were an open and obvious danger to all involved.
On 11 August 1977, Charlie Glenn, employed by Foster as a crane oiler, and crane operator Mike Washburn, also an employee of Foster, were instructed by John Gower, Foster's construction superintendent, to move a 50-ton Bucyrus-Erie crane to assist in the loading of pipe supports onto a flatbed truck on the scrap haul road. Glenn drove the crane while Washburn operated the boom from the cab while facing the rear of the vehicle. While the crane was being moved, Gower stopped the crane to remind Glenn and Washburn where the pipe supports were located. Before he left, Gower reminded Glenn and Washburn to "watch out for them wires."
On the day of the accident, Marvin Blalock, the equipment foreman of Foster, also warned Glenn and Washburn about the overhead wires on scrap haul road. Blalock testified that he told them that as far as he was concerned, "those wires are all hot and don't get any closer than 17 feet of those wires."
When the cranes reached the area where the pipe supports were located, the pipefitters, who were Foster employees, directed Glenn to position the crane in an area near the overhead wires. Once the crane was in position, Glenn got out of the crane, and Washburn proceeded to lift the boom of the crane into position. Since Washburn faced the rear of the crane while it was being moved, he never saw the overhead wires. When asked during trial as to whether he knew the overhead wires were in the vicinity, Washburn testified, "Well, I knew that, I guess, subconsciously, I knew that they were in the general area because we had passed under them before, but, you know, you don't have time to pay attention or I didn't pay attention to it before...." At no time did Washburn get out of the cab of the crane and survey the area where the pipe supports were located.
Glenn got off the crane when it stopped and Washburn began to boom the crane up and swing it over to the pipe supports. *154 While doing so, Washburn inadvertently caused the crane to come into contact with the overhead wires, electrocuting Glenn, who had grabbed hold of the handrail of the crane while he was still on the ground.
In her original complaint, plaintiff, Glenn's widow, charged U.S. Steel with negligence and wantonness in: failing to warn Glenn of the presence of the high voltage electrical wires; failing to de-energize the wires; and designating areas for storage of materials and supplies in dangerous proximity to those wires. The complaint was subsequently amended to include Bucyrus-Erie as a party defendant. Plaintiff alleged that Bucyrus-Erie was negligent in the manufacture and sale of a defective crane.
The case was tried before a jury and a verdict returned in favor of U.S. Steel and Bucyrus-Erie; judgment was entered accordingly. Plaintiff's motion for a new trial was denied.
Mrs. Glenn concedes that no error was committed in the trial court's charge to the jury regarding the liability of Bucyrus-Erie and it is not an appellee here. It is a well settled rule that this court has the authority to reverse as to one defendant and leave undisturbed the verdict in favor of another defendant. See Harnischfeger Corporation v. Harris, 280 Ala. 93, 190 So.2d 286 (1966).
The issue presented on appeal is whether the trial court's jury instructions regarding a landowner's duty to an employee of an independent contractor constituted prejudicial error requiring reversal. The jury instructions in dispute are as follows:
"... Now, a landowner or the owner of property owes a duty to the employee or to an employee of an independent contractor to warn of any hidden dangers or latent defects on the property of which the property owner knows and which the independent contractor or his employee does not know, nor such that the independent contractor or employee ought to know....
"Now, a landowner owes no duty to an employee of an independent contractor for dangers which are open and obvious of which the contractor or its employee is aware of or which he should be aware in the exercise of reasonable care, commensurate with the facts and circumstances which then exist. The owner of premises owes a duty to an employee of an independent contractor to warn of dangers which are incidental to the work, which the contractor had agreed to perform of which the owner of the premises is aware and of which the contractor is not fully aware or should not know in the exercise of reasonable care which is commensurate with all the facts and circumstances which then exist."
Under the facts of this case, the relationship between U.S. Steel and Foster is clearly that of landowner and independent contractor. This court has defined the duty owed by an owner of premises to an independent contractor on a number of occasions.
"[A]n owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury. Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966)."
Veal v. Phillips, 285 Ala. 655, 657-658, 235 So.2d 799 (1970). This rule applies equally to those employees of the independent contractor on the premises engaged in work in furtherance of performing the contract.
In McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966), an employee of an independent contractor suffered fatal injuries from an electrical shock caused by a nearby crane coming into contact with uninsulated, high voltage electrical power lines owned by the defendant, Woodward Iron Company. A verdict was rendered in favor of Woodward Iron, and the administratrix of the employee appealed, claiming *155 the trial court erred by charging the jury as follows:
"`I charge you, gentlemen of the jury, that a landowner is not liable to an invitee on its premises because of an injury to the invitee resulting from an open and obvious dangerous condition of which the invitee is aware or of which he should be aware in the exercise of reasonable care, and if you are reasonably satisfied from the evidence in this case that plaintiff suffered his injuries and damages as a proximate result of an open and obvious dangerous condition of which plaintiff was aware or should have been aware in the exercise of reasonable care, then your verdict must be for the defendant.'"
This court held that the charge in McRee, which closely resembles the charges at issue in this case, was a correct statement of law regarding the duty owed by a landowner to an invitee and cited Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954), and Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937), as authority.
It is apparent from the evidence that the overhead high voltage lines, owned and maintained by U.S. Steel, were an open and obvious danger to all personnel who worked at U.S. Steel's Fairfield Works. The supervisory personnel of Foster were fully aware of this danger and warned Foster's employees of the attendant hazards on several occasions. U.S. Steel never received a request from Foster to deenergize the power lines over the scrap haul road, nor did Foster inform U.S. Steel of plans to use lift cranes in the general vicinity of the power lines.
Any employee who works with heavy equipment, especially lift cranes, should know of the consequences which can occur if such equipment comes into contact with a high voltage power line; in fact, the following warning was displayed on the door of the crane involved in the event which made the basis of this suit:

"DANGER
"DEATH OR INJURY MAY RESULT FROM CONTACTING ELECTRICAL LINES.
"UNLAWFUL TO PLACE ANY PART OF THIS MACHINE OR LOAD WITHIN 10 FEET OF HIGH VOLTAGE LINES OF 50,000 VOLTS OR LESS."
Another warning was mounted in the cab where the crane operator sits and it stated:

"WARNING
"DO NOT OPERATE WITHIN 17 FEET OF OVERHEAD ELECTRICAL WIRES. CLOSER CLEARANCE MUST BE SPECIFICALLY AUTHORIZED."
Therefore, it is apparent that Foster's employees were fully aware of the dangers involved with lift cranes and power lines and that extreme care should be used when operating near such an open and obvious danger. Foster had in its possession five smaller cranes known as "cherry pickers." These cherry pickers could have easily been utilized to load the pipe supports rather than the large 50-ton crane. Utilizing the cherry pickers would have lessened the danger of contact with the power lines. There was no evidence submitted to show why the smaller cranes were not used. While the existence of any high voltage power lines creates a dangerous situation, it would work an undue hardship on a landowner to hold him responsible for any injury or death resulting from someone's contact with the high voltage power lines which are open and obvious and of which that person is aware, or should be aware in the exercise of reasonable care. U.S. Steel took preventive measures to make the overhead high voltage lines less of a hazard to all personnel in the area: Warning signs advising of the danger and voltage of the lines were placed on either side of those power lines where the same crossed the scrap haul road as well as the fact the power lines were 37 to 39 feet above the roadway at the site of the accident. There was no proof in this case that these conditions deviated from any standards of safety applicable to the surrounding conditions and circumstances.
It is Mrs. Glenn's contention that the "open and obvious" rule cannot be applied *156 in this case. We cannot agree. Under the particular facts of this case that rule clearly applies. This being true, the trial court did not err in giving the disputed jury charges.
For the reasons stated, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER and JONES, JJ., dissent.
MADDOX, J., not sitting.
JONES, Justice (dissenting).
I respectfully dissent. I would approach the issue thusly: In the ordinary relationship of landowner/independent contractor, and under normal circumstances, the contested portion of the trial court's charge finds support in the evolving process of the common law.
"[O]ur decisions are to the effect that an owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury. Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966)." Veal v. Phillips, 285 Ala. 655, 657-58, 235 So.2d 799 (1970).
This principle, reaffirmed in Tice v. Tice, 361 So.2d 1051 (Ala.1978), is supported by logic and sound reasoning. When a landowner knows that his invitee is aware of both the conditions on the premises and the dangers involved therein, or that such conditions and dangers are so obvious that his invitee can be assumed to know of them, it is not unreasonable for that landowner to assume that his invitee will, at the least, exercise that amount of care, commensurate with the risks involved, necessary to protect himself from harm. Failing to so protect himself, then, the invitee voluntarily assumes the risk of continuing on the premises.
This traditional view that either a warning from the landowner, or the obviousness of the condition, is sufficient to discharge all duties of the landowner was set out in Restatement of the Law of Torts, Vol. 2, § 343 (1934):
"§ 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR.
"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon, if, but only if, he
"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and
"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and
"(c) invites or permits them to enter or remain upon the land without exercising reasonable care
"(i) to make the condition reasonably safe, or
"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."
The inherent weakness of this principle has been recognized by the courts and by leading authorities in the field of tort law. In Harper and James, The Law of Torts, Vol. 2, § 27.13, pp. 1494, 1495 (1956), the authors note:
"The Restatement view is wrong in policy. The law has never freed landownership or possession from all restrictions or obligations imposed in the social interest. The possessor's duty to use care towards those outside the land is of long standing. And many obligations are imposed for the benefit of people who voluntarily come upon the land. For the invitee, the occupier must make reasonable inspection and give warning of hidden *157 perils. Why should his duty stop at this point short of reasonable care? It might be said to be a matter of reasonable expectation: the invitee expects the premises to be prepared for him only up to the point where he knows they are not. But this should not be conclusive. Reasonable expectations may raise duties, but they should not always limit them. The gist of the matter is unreasonable probability of harm in fact. And when that is great enough in spite of full disclosure, it is carrying the quasi-sovereignty of the landowner pretty far to let him ignore it to the risk of life and limb."
See, also, Keeton, Personal Injuries Resulting From Open and Obvious Conditions, 100 U.Pa.L.Rev. 629 (1952); Prosser, Business Visitors and Invitees, 26 Minn.L.Rev. 573 (1942).
I would add that the "open and obvious" rule of § 343 of the Restatement is patently inconsistent with the basic premise of all tort law: the protection of persons and property, through the exercise of reasonable care, against unreasonable and foreseeable risks of harm.
Alabama case law, however, along with that of an increasing number of other jurisdictions, recognizes that in certain situations the usual rules of premises liability cannot, and do not, apply. Where, for example, the unreasonable risk of foreseeable harm to the invitee remains despite the landowner's warning of the condition, or the fact that the condition is "open and obvious," the landowner's duty with respect to the independent contractor or its employees is not discharged by the warning or the openness or obviousness of the condition. Alabama Power Company v. Henderson, 342 So.2d 323 (Ala.1977).
In the earlier case of Kingsberry Homes Corporation v. Ralston, 285 Ala. 600, 235 So.2d 371 (1970), the Court discussed the holding in Foster & Creighton Co. v. St. Paul Mercury Indemnity Co., 264 Ala. 581, 88 So.2d 825 (1956), where the trial court refused to give the defendant's requested jury instruction that if the plaintiff knew of the unsafe condition, he could not recover from the defendant. The Kingsberry court noted that the trial court in Foster and Creighton "was correct in refusing this charge because mere knowledge of the dangerous condition unaccompanied by an appreciation of the danger and a want of due care is insufficient to constitute contributory negligence [on the part of the injured invitee]." Kingsberry Homes, 285 Ala. at 607, 235 So.2d 371. Further, the Kingsberry Court found no error in the lower court's refusal to give defendant's requested charges, basing its holding on the Foster and Creighton principles.
The American Law Institute's Restatement (Second) of Torts, (1977), reflects this refinement of premises liability law:
"§ 343A. KNOWN OR OBVIOUS DANGERS.
"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Emphasis supplied.)
The record before us reveals circumstances of a nature which, in my opinion, compel the conclusion that the trial court's instructions were too restrictive with respect to U.S. Steel's duty to Plaintiff's intestate circumstances from which the jury could find that U.S. Steel should have anticipated the unreasonable risk of harm posed by the possibility of a contact between a crane's boom and the high voltage wires at the Fairfield Works. Those circumstances include U.S. Steel's ownership, maintenance, and control of the uninsulated power lines; U.S. Steel's authority to deenergize the power lines; U.S. Steel's designation of the contractor's supply areas in proximity to the overhead wires; U.S. Steel's responsibility of premises inspection, which should have revealed both the danger involved in, and the foreseeability of injury occurring as a result of, the proximity of the storage areas to the lines.
Notwithstanding U.S. Steel's warning the independent contractor of the presence of the wires or the contractor's own knowledge *158 of and appreciation for the condition and the danger involved, that knowledge in no way diminished the unreasonable risk of danger to Charlie Glenn. While U.S. Steel, as landowner, controlled the presence of the condition (and the attendant risk of harm) and could have chosen various means of diminishing the risk involved, Glenn and Washburn had no choice but to perform their assigned tasks within the framework of available equipment and supplies and existing conditions. This disparity between the positions of landowner and invitee/independent contractor, under the instant circumstances, once U.S. Steel anticipated the risk of harm posed by the presence of the wires in the area of the construction, furnishes an inference that it was under the duty to take additional steps to protect the independent contractor's employees. Within the factfinding prerogative, the jury should be free to evaluate whether U.S. Steel's failure to take such protective and preventive measures proximately resulted in the death of Plaintiff's intestate.
I would adopt the position of § 343A of the Restatement (Second) of Torts, as an extension of this State's principles of premises liability.[1]
Furthermore, the majority opinion retains the 1934 version of the Restatement of the Law of Torts as to the landowner's duty with respect to open and obvious dangers, while Beloit Corporation v. Harrell, 339 So.2d 992 (Ala.1976), adopted the 1977 version of the Restatement in a products liability context. See, also, Ford Motor Company v. Rodgers, 337 So.2d 736 (Ala. 1976). I find no reasonable basis for perpetuating the property-rights-over-personal-rights notion. I would simply apply § 343A, Restatement (Second) Torts, equally across the board.
FAULKNER, J., concurs.
NOTES
[1] This application of the Known and Obvious Dangers principles of the Restatement (Second) of Torts is distinguishable from Weeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381 (Ala. 1982), which was decided favorably to the general contractor on principles of retained right of control of the work place and the work related activities allegedly causing the injury.