REL:  April 14, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

————————————————

### 2210486

————————————————

**Harold Wallace**

**v.**

**The Housing Authority of the City of Talladega**

**Appeal from Talladega Circuit Court**
**(CV-18-900509)**

EDWARDS, Judge.

Harold Wallace appeals from a summary judgment entered by the Talladega Circuit Court ("the trial court") in favor of The Housing Authority of the City of Talladega ("the Housing Authority") as to his claims for alleged injuries that he suffered as a result of a fall while descending the back-porch stairs to his apartment.  Because we agree

with Wallace's argument that the trial court erred by not applying the standard discussed in Coggin v. Starke Bros. Realty Co., 391 So. 2d 111 (Ala. 1980) (plurality opinion) (quoted with approval in Vick v. H.S.I. Mgmt., Inc., 507 So. 2d 433, 435 (Ala. 1987)), in granting the Housing Authority's motion for a summary judgment, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

The following factual summary is based on the parties' evidentiary submissions regarding the Housing Authority's motion for a summary judgment. For several years Wallace was a tenant of an apartment in the Housing Authority's Curry Court apartment complex. In 2015, Wallace suffered a stroke. In 2016, he applied to the Housing Authority for a transfer to the Knoxville Homes apartment complex, where his elderly mother resided, so that he could assist her and so that relatives in or near that complex could easily check on him. The Housing Authority approved Wallace's request and authorized his transfer, subject to the availability of an apartment.

Wallace moved to his Knoxville Homes apartment on December 16, 2016. He testified in his December 2019 deposition that the Housing

2210486

Authority had informed him that his Knoxville Homes apartment had been inspected and was ready for him to move in. According to Wallace, however, when he arrived to move into the apartment it was not ready. He stated that the apartment was dirty, that there were indications of roach and rat issues, that the floors needed additional work, that the cabinet under a sink had a hole that needed repair, and that the handrails around the back and front porches and the back-porch stairs had been removed and not replaced. Wallace stated that he could not return to his former apartment and that he proceeded to move into his Knoxville Homes apartment despite the Housing Authority's purported misrepresentation as to the readiness of the apartment.

The deposition colloquy between Wallace and the Housing Authority's counsel included the following:

"[The Housing Authority's counsel]: … What was it about the apartment that you did not think was ready?

"[Wallace]: It didn't have no rail. They cut the rails and -- they cut the rails off. But I was told it going to be fixed within a day or two. That's why I move in, because I thought they going to fix it and it's been three years.[1]

_____

[1]Wallace testified that the Housing Authority had reinstalled railings a few months after his fall. Thus, Wallace's reference to "three

3

"[The Housing Authority's counsel]:  All right.  So you were told that the rails, which you saw were down, would be fixed within a day or two after you moved in?

"[Wallace]:  Yes."

Wallace stated that a Housing Authority employee again informed him that "[t]hey were going to fix everything a week later" but, Wallace stated, "they didn't."

The Housing Authority's counsel asked Wallace about a December 15, 2016, move-in-inspection form for his Knoxville Homes apartment, which included Wallace's purported signature on a signature line for "Resident Acceptance."  That form contains line items for various parts of the apartment rooms (doors, floors, etc.), but no line item specifically for porches or stairs; all line items are checked "P," which appears to indicate they were acceptable.  Also, there was an area on the move-in-inspection form for "work items" and comments, but those areas are blank.  When asked about the move-in-inspection form, Wallace stated

---

years" appears to have been a reference to the period between Wallace's alleged fall and his deposition, not between his fall and the reinstallation of the railings.

that the essentially illegible signature was not his signature, but he then stated "[t]hat's probably when I had that stroke. I don't know. Because I know I write bad with my hand." When questioned again about whether the signature was his, Wallace stated: "I don't know. I don't know, but I'm saying -- you know, because I can't write with it right now, but if I did, [the employee who also signed the inspection form] had told me that one was ready." Wallace denied ever inspecting the Knoxville Homes apartment before the day he moved in. Also, according to Wallace, the employee who signed the move-in-inspection form was "from Curry Court." Wallace denied ever going to the Knoxville Homes apartment with the employee at issue, though he admitted that that employee had been present and had opened the door to the Knoxville Homes apartment on the day that Wallace moved.

Wallace stated that from the day he moved into his Knoxville Homes apartment on December 16, 2016, until his fall on December 29, 2016, he had three conversations with employees of the Housing Authority about installing the porch-and-stair railings. He stated that initially he was told that the person who installed railings was deceased.

5

Nevertheless, according to Wallace, he continued to ask about the railings, and the employees of the Housing Authority repeatedly told him that the railings would be reinstalled.

According to Wallace, on the morning that the fall occurred, he and a friend who had come to check on him were going to go to breakfast. Wallace stated that he fell while descending the back-porch stairs; the friend was locking the back door when Wallace fell. Wallace stated that he lost his balance stepping down on the second step of the three steps down from the back porch, that he was using his cane to help balance himself as he descended the stairs, but that he fell nevertheless. Wallace attributed his fall to the lack of a railing and stated that he landed on the concrete sidewalk when he fell but, fortunately, had not hit pieces of cut railing that were protruding from the ground where the previous rails had been removed. According to Wallace, as a result of the fall he had injured his right shoulder and his knees and perhaps his neck, the latter of which he had previously injured and had surgically repaired in 2008.

On December 17, 2018, Wallace filed a complaint in the trial court against the Housing Authority, and he subsequently amended his

6

complaint. Wallace alleged that his injuries from the fall were the result of negligence or wantonness by the Housing Authority or the person or legal entity who was responsible for the maintenance of his Knoxville Homes apartment. On October 1, 2021, the Housing Authority filed a motion for a summary judgment. The Housing Authority argued that it was entitled to a summary judgment because the absence of the back-porch stair railing was an open and obvious danger of which Wallace was aware, and, it argued, it therefore had no further duty to Wallace. The Housing Authority relied on our supreme court's decision in Daniels v. Wiley, 314 So. 3d 1213 (Ala. 2020), in support of its argument.

In support of its motion for a summary judgment, the Housing Authority included excerpts from Wallace's deposition testimony. Wallace opposed the Housing Authority's motion for a summary judgment, and he submitted his entire deposition testimony in support of his opposition to the Housing Authority's motion. The materials before the trial court also included a copy of the move-in-inspection form and pictures of the front and back porches and stairs with railings that had been installed after Wallace's fall. After a hearing on the Housing

2210486

Authority's motion, the trial court entered an order on February 2, 2022, granting the Housing Authority a summary judgment as to Wallace's claims based on the authority of Daniels.[2]

> " 'This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."

---

[2]Wallace also had alleged claims in his complaint against fictitious parties. The trial court did not address those claims in the February 2022 judgment. However, that judgment is a final judgment for purposes of appeal. See Webb v. Knology, Inc., 164 So. 3d 613, 616 n.1 (Ala. Civ. App. 2014) (discussing the application of Rule 4(f), Ala. R. Civ. P., and stating that "[n]o defendants were ever substituted for the fictitiously named defendants; therefore, the existence of those unserved and unnamed defendants did not preclude the finality of the trial court's summary judgment").

8

2210486

West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989).'"

Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004)).

On appeal, Wallace argues that the trial court erred by relying on the holding in Daniels, which rejected Restatement (Second) of Torts § 343A (Am. L. Inst. 1965) as being a correct statement of Alabama law as to a landlord's duty. In support of his argument, Wallace relies, in part, on cases that were expressly overruled in Daniels. See discussion, infra. However, as he did before the trial court, Wallace also relies on Coggin, which reflects a separate line of authority applying the principles discussed in Restatement (Second) of Torts §§ 360-361 (Am. L. Inst. 1965) in determining a landlord's duty. To understand the holding in Daniels and why we conclude that the exception or special duty rule discussed in Coggin remains binding precedent, a discussion of the legal context for those precedents is necessary.

Traditionally, it was well settled in Alabama that "[t]he general duty imposed by the law on the owner of premises is to be reasonably sure that he is not inviting another into danger, and to exercise ordinary

9

care and prudence to render and keep his premises in a reasonably safe condition for invitees." Prudential Ins. Co. of America v. Zeidler, 233 Ala. 328, 331, 171 So. 634, 636 (1936). However, generally, "[t]he landlord, in the absence of a covenant to repair, is liable only for latent defects, known to him at the time of the leasing, and which are concealed from the tenant." Chambers v. Buettner, 295 Ala. 8, 12, 321 So. 2d 650, 653 (1975); see, e.g., Faucett v. Provident Mut. Life Ins. Co. of Philadelphia, 244 Ala. 308, 310, 13 So. 2d 182, 184 (1943) ("[T]he lessee takes the property as it is, with no duty on the lessor to repair, the lessor is under duty to give notice of latent defects, known to him to be dangerous to occupants, and which were not reasonably discoverable by the lessee."); Zeidler, 233 Ala. at 331, 171 So. at 636.[3]

---

[3]Also "[i]t is the law that where the lessor, under no duty to repair, voluntarily undertakes so to do, he is liable for injuries proximately caused by negligence in so making repairs as to render the premises dangerous to life or limb of those rightfully occupying the premises." Faucett, 244 Ala. at 312, 13 So. 2d at 186; see also Zeidler, 233 Ala. at 332, 171 So. at 637; cf. Hart v. Coleman, 201 Ala. 345, 347, 78 So. 201, 203 (1917) (action ex contractu) ("The landlord was not only informed of its unsafe condition, but admitted in his testimony the necessity for repairs on the porch, and that he knew of the same, for he had seen it himself when he went to collect the rents. The tenant had informed him that unless it was fixed, she would no longer occupy the premises. It is

Consistent with the traditional, general rules in Alabama as to the liability of a landlord discussed above, Restatement (Second) of Torts § 356 (Am. L. Inst. 1965), states that, "[e]xcept as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."[4]   Comment a. to

---

difficult to conceive that the parties could have had in mind at the time of the agreement to repair any other injuries or damages save those resulting to the person of the tenant by falling through the porch, just as, in fact, did happen."). See generally Restatement (Second) of Torts § 357 (Am. L. Inst. 1965) (discussing the contract-to-repair exception as it relates to a landlord's duty).

Wallace makes no argument in his appellate brief that the Housing Authority owed him a duty to repair the back-porch-stair railing based on the terms of his lease, on an agreement that the Housing Authority made with him, or on a voluntary undertaking to make such repair. Accordingly, we do not address that issue. See Pardue v. Potter, 632 So. 2d 470, 473 (Ala. 1994) ("Issues not argued in the appellant's brief are waived.").

[4]Likewise, Restatement (Second) of Torts § 355 (Am. L. Inst. 1965), states that "[e]xcept as stated in §§ 357 and 360-362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."

2210486

Restatement (Second) of Torts § 356 discusses the basis for that rule and

its pertinent exceptions:

> "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and to those outside of it. Therefore, as in the case of the vendor under § 352, it is the general rule that the lessor is not liable to the lessee, or to others on the land, for injuries occurring after the lessee has taken possession, even though such injuries result from a dangerous condition existing at the time of the transfer.
>
> "To this general rule, the modern law has developed a number of exceptions, which are stated in §§ 357-362. These exceptions have been due in large part to increasing recognition of the fact that tenants who lease defective premises are likely to be impecunious and unable to make the necessary repairs which their own safety and that of others may demand; that one who is in possession of the premises only for a limited term does not have the same incentive to maintain them in good condition as the lessor to whom they will revert at the end of the lease; and that the landlord who receives benefit from the transaction in the form of rent may properly be required to assume in return at least certain limited obligations with respect to the safety of others."

The reference of Comment a. to "modern law" regarding the exceptions

to § 356 is a bit misleading because substantially the same principles are

present in the comparable exceptions as to a landlord's duty discussed in

12

2210486

Restatement (First) of Torts, §§ 357-62 (Am. L. Inst. 1934), including, in

pertinent part the exceptions described in §§ 360-61 of the Restatement

(Second) of Torts.

Section 360 of the Restatement (Second) of Torts states:

"A possessor of land who leases a part thereof and retains in
his own control any other part which the lessee is entitled to
use as appurtenant to the part leased to him, is subject to
liability to his lessee and others lawfully upon the land with
the consent of the lessee or a sublessee for physical harm
caused by a dangerous condition upon that part of the land
retained in the lessor's control, if the lessor by the exercise of
reasonable care could have discovered the condition and the
unreasonable risk involved therein and could have made the
condition safe."

(Emphasis added.); see also id. at cmt. a. ("The lessee may, for example,

know that the common entrance to the apartment or office which he has

leased has become dangerous for use because of the lessor's failure to

maintain it in safe condition.  His knowledge may subject him to liability

even to his own licensees, if he fails to warn them of the danger.  It will

not, however, relieve the lessor of liability for his negligence in permitting

the entrance to become dangerous."); id. at cmt. b. ("The rule stated in

this Section may also apply even though the person injured, whether he

be the lessee himself or a third person, has knowledge of the existence of

the dangerous condition. His knowledge may put him in contributory fault … and in that event he will be disabled from maintaining an action for any harm suffered while using the dangerous premises. But unless the danger is so apparent and so great that it is unreasonable for him to encounter it in view of the purpose of his use, or unless knowing the danger he fails to exercise that caution which a reasonable man would exercise under the same circumstances, the lessor remains liable to him notwithstanding his knowledge of the existence of the condition."); Restatement (First) of Torts § 360 cmt. a. (Am. L. Inst. 1934) (acknowledging that a lessee may be precluded from recovery based on the lessee's contributory negligence but "[t]he rule stated in this Section applies to subject the lessor to liability irrespective of whether the lessee or those upon the land in his right know or do not know of the dangerous condition").

Likewise, § 361 of the Restatement (Second) of Torts states:

"A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition

14

> upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care
>
> "(a) could have discovered the condition and the risk involved, and
>
> "(b) could have made the condition safe."

(Emphasis added.); see also id. at cmt. a. ("The rule stated in this Section applies irrespective of whether the lessee or his licensees coming in his right upon that part of the land leased to him, know or could, by the exercise of reasonable care, discover the dangerous condition maintained by the lessor upon that part of the land maintained within his own control. As to the effect of the knowledge of the lessee and others entering upon the land with his consent, see § 360, Comment a."); and Restatement (First) of Torts § 361 cmt. a. (Am. L. Inst. 1934).

In Hancock v. Alabama Home Mortgage Co., 372 So. 2d 858, 858 (Ala. 1979), the supreme court quoted the exception to the general rule as to a landlord's duty set out in the Restatement (Second) of Torts § 360 and stated "[t]his has long been the rule in this State." See also Zeidler, 233 Ala. at 333, 171 So. at 638 ("[T]he general authorities -- state and federal -- in this jurisdiction are to the effect that, 'to the rule that a

tenant takes the leased premises subject to defects not amounting to a trap, there is an exception to the effect that the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negligence.' (Italics supplied.) 25 A.L.R. 1273; Mudd et al. v. Gray, 200 Ala. 92, 75 So. 468, [(1917)]." (first emphasis added)); Hancock v. Alabama Home Mortg. Co., 393 So. 2d 969, 970 (Ala. 1981) (quoting Zeidler favorably and stating that "[t]his duty is imposed so that 'tenants and their invitees may have egress and ingress without unnecessary danger in the due exercise of the privilege or necessity of going to and from such apartment house or office building.' Preston v. LaSalle Apartments, 241 Ala. 540, 3 So. 2d 411 (1941).").

Likewise, in Coggin, the opinion quoted the exceptions to the general rule as to a landlord's duty set out in Restatement (Second) of

Torts §§ 360-61, and, in the context of a slip-and-fall claim by Marguerite G. Coggin against her landlord, stated that there was evidence that she "fell while descending a steep stairway with narrow steps and without a handrail. All of the elements of her claim could reasonably be inferred by the factfinder from the totality of the circumstances as shown by the evidence. … [T]he evidence, including evidence bearing on the defense of 'open and obvious danger,' viewed in light of the applicable substantive law, presents genuine issues of material fact which [Coggin] is entitled to have submitted, pursuant to appropriate instructions, for a jury's determination." 391 So. 2d at 113; see also Vick v. H.S.I. Mgmt., Inc., 507 So. 2d 433, 435 (Ala. 1987) (noting Hancock, quoting Coggin as to § 360 of the Restatement (Second) of Torts, distinguishing between a landlord's duty to warn and a landlord's duty to maintain certain common areas when considering the import of a danger being "open and obvious," and stating "[plaintiff] presented evidence that while upon the common areas of the apartment complex, she slipped and fell at night on some stairs located in an area of the complex that had insufficient lighting. There was evidence that the apartment manager had received

complaints about the inadequate lighting. Furthermore, there was evidence that at the time of her fall, the handrail on the stairs had been broken and had never been repaired or replaced. We hold that there is evidence indicating that [the landlord] had not met its duty to maintain common areas in a reasonably safe condition."); Chambers v. Buettner, 295 Ala. 8, 12, 321 So. 2d 650, 653 (1975) (stating that "the rule set out in Pearce v. Sloss-Sheffield Steel & Iron Co., 211 Ala. 639, 101 So. 585 (1924)," is "embodied in … § 361" of the Restatement (Second) of Torts).

In contrast to the foregoing precedents applying what the supreme court has described as the longstanding law in Alabama, the reliance of our courts on Restatement (Second) of Torts § 343A, which was quoted and discussed in Daniels, see 314 So. 3d at 1218-1225, has no foundation in Alabama law. Section 343A was first discussed by Justice Jones in Glenn v. United States Steel Corp., 423 So. 2d 152, 156 (Ala. 1982) (Jones, J., dissenting, joined by Faulkner, J.). In Glenn, which involved an electrocution incident that occurred at U.S. Steel's Fairfield Works, the supreme court stated that it

> "ha[d] defined the duty owed by an owner of premises to an
> independent contractor on a number of occasions.

> "'[A]n owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, <u>or ought to know of</u>. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury. <u>Crawford Johnson & Co. v. Duffner</u>, 279 Ala. 678, 189 So. 2d 474 (1966).'"

423 So. 2d at 154 (quoting <u>Veal v. Phillips</u>, 285 Ala. 655, 657-58, 235 So. 2d 799 (1970)). In his dissent in <u>Glenn</u>, Justice Jones acknowledged that the general rule as to premises liability was that "either a warning from the landowner, or the obviousness of the condition, is sufficient to discharge all duties of the landowner," a rule that was said to be comparable to <u>Restatement (First) of Torts</u> § 343 (Am. L. Inst. 1934).[5]

---

[5]Section 343 of the <u>Restatement (First) of Torts</u>, which addressed the negligence liability of possessors of land generally, rather than only landlords, stated:

> "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

>> "(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

2210486

<u>Glenn</u>, 423 So. 2d at 156. Justice Jones criticized the traditional rule

discussed in the main opinion in <u>Glenn</u> as being too restrictive. He urged

the supreme court to adopt the more liberal rule as to duty discussed in

-----

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

See also <u>id.</u> at cmt. a. ("[T]he visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions."); <u>id.</u> at cmt. d. ("A business visitor is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein.").

20

2210486

Restatement (Second) of Torts § 343A: "'(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (Emphasis supplied.)'" 423 So. 2d at 157 (quoting Restatement Second of Torts § 343A (Am. L. Inst. 1965)).[6]

_____

[6]We note that, as was the case with § 343 of the Restatement (First) of Torts, see note 5, supra, § 343A of the Restatement (Second) of Torts is among the sections of the Restatement (Second) of Torts discussing the rules applicable to the broader category of any possessor of land (not merely landlords), which generally includes any person occupying and intending to control the land at issue. See Restatement (Second) of Torts §§ 328E-350 (Am. L. Inst. 1965) (discussing the rules applicable to a possessor of land); Restatement (Second) of Torts §§ 355-362 (Am. L. Inst. 1965) (discussing the rules applicable to a landlord). Also, § 343A of the Restatement (Second) of Torts was intended as a companion section to Restatement (Second) of Torts § 343 (Am. L. Inst. 1965), see id. at cmt. a. Section 343 of the Restatement (Second) of Torts states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

21

After the decision in Glenn, the supreme court cited Restatement (Second) of Torts § 343A in support of certain decisions, see, e.g., Terry v. Life Ins. Co. of Georgia, 551 So. 2d 385, 386 (Ala. 1989), overruled by Daniels v. Wiley, 314 So. 3d 1213 (Ala. 2020); see also Hale v. Sequoyah Caverns & Campgrounds, Inc., 612 So. 2d 1162, 1165-66 (Ala. 1992) (Hornsby, C.J., concurring in the result) (Section 343A "reflects a growing judicial awareness that occupiers of premises are generally in a better position in modern society to protect the public from hazards than are invitees who must go into public places to function in that society. In addition, the Restatement [(Second) of Torts] view encourages landowners to repair defects, rather than to keep them 'open and obvious' in order to avoid liability under the traditional approach."). Nevertheless, the supreme court also stated in Ex parte Gold Kist, Inc., 686 So. 2d 260, 261 (Ala. 1996), that it "decline[d] to adopt § 343A as a

---

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

22

correct statement of the law relating to the liability of a possessor of land."

In <u>Daniels</u>, which involved a tenant's claims arising from a slip-and-fall on a muddy sidewalk that led to the mail kiosk, the supreme court again addressed the novelty of <u>Restatement (Second) of Torts</u> § 343A that had found its way into that court's precedents and this court's precedents after the decision in <u>Glenn</u>; the supreme court expressly overruled precedents relying on <u>Restatement (Second) of Torts</u> § 343A as a correct statement of the general rule governing the duty of a landlord as to an open and obvious danger. 314 So. 3d at 1224-25. However, in addition to discussing the traditional, general rule governing a landlord's duty, the supreme court continued to acknowledge the existence of Alabama precedent regarding exceptions to the general rule. Specifically, the supreme court in <u>Daniels</u> quoted at length from <u>Sessions v. Nonnenmann</u>, 842 So. 2d 649 (Ala. 2002):

> "'[O]penness and obviousness of a hazard, if established, negate the general-contractor invitor's duty to eliminate the hazard or to warn the subcontractor invitee of the hazard; and this negation of duty, in and of itself, defeats the subcontractor's injury claim without the operation of any affirmative defense such as contributory negligence or

assumption of risk. In other words, in this context, openness and obviousness, if established, negate the duty, defeat the claim, and pretermit any issue of the effect of openness and obviousness on the affirmative defenses of contributory negligence and assumption of risk. Only if the subcontractor plaintiff can establish some special duty on the general contractor to protect the subcontractor from open and obvious hazards, as distinguished from the general contractor's general duty as stated by Breeden [v. Hardy Corp., 562 So. 2d 159 (Ala. 1990)], which does not require such protection, and only if the subcontractor plaintiff can likewise establish a breach of such special duty and proximately resulting damages, might the issue of the effect of the openness and obviousness on the affirmative defenses of contributory negligence and assumption of risk become critical.'"

Daniels, 314 So. 3d at 1223-24 (quoting Sessions, 842 So. 2d at 652).

Returning to its discussion regarding the general rule, the supreme court

in Daniels continued:

"[C]ontrary to Daniels's contention, this Court in Sessions explicitly recognized that the law relied upon by Daniels holding that a landlord has a duty to eliminate open and obvious dangers or to warn an invitee of such dangers if the invitor 'should anticipate the harm' -- is not the law in Alabama. ... To the extent that Turner [v. Dee Johnson Properties, 201 So. 3d 1197 (Ala. Civ. App. 2016)]; McDonald [v. Lighami Dev. Co., 962 So. 2d 847 (Ala. Civ. App. 2006) (plurality opinion)]; Ex parte Howard ex rel. Taylor, 920 So. 2d 553 (Ala. 2005); Campbell [v. Valley Garden Apartments, 600 So. 2d 240 (Ala. 1992)]; Terry [v. Life Ins. Co. of Georgia, 551 So. 2d 385 (Ala. 1989)]; and other cases citing, quoting, and/or applying the Restatement (Second) of Torts § 343A may hold otherwise, they are overruled."

2210486

<u>Daniels</u>, 314 So. 3d at 1224-25.

The supreme court next considered in <u>Daniels</u> the argument that the landlord at issue,

"Hawthorne-Midway [Lily Flagg, LLC,] breached a special duty, as distinguished from the general duty we have already discussed. Daniels appears to maintain that, because the [Safety and Maintenance] Manual used at the apartment complex required daily inspections of the property to identify and remove debris, Hawthorne-Midway had 'a self-imposed duty to inspect the property for daily debris' and that it breached that duty by failing to identify and remove the danger created by the mud. In her discussion of this issue, <u>Daniels cites general propositions of law regarding a landlord's duty to maintain common areas</u>, <u>see</u> <u>Hancock v. Alabama Mortg. Co.</u>, 393 So. 2d 969, 970 (Ala. 1981) (noting that landlord has a duty to maintain the common areas in a reasonably safe condition); <u>Graveman v. Wind Drift Owners' Ass'n</u>, 607 So. 2d 199, 204 (Ala. 1992) (noting that landlord's duty to maintain common areas includes stairways intended for the common use of tenants); and <u>Coggin v. Starke Bros. Realty Co.</u>, 391 So. 2d 111, 112 (Ala. 1980) (noting that tenants are invitees of the landlord while using common areas on the landlord's property). <u>Daniels does not cite any legal authority to support her contention that a landlord's safety manual imposes a special duty of care on the landlord to protect tenants from open and obvious dangers</u>.

"Arguments in an appellant's brief must be supported by adequate legal authority. <u>See</u> Rule 28(a)(10), Ala. R. App. P. '[I]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' <u>Dykes v. Lane Trucking,</u>

> Inc., 652 So. 2d 248, 251 (Ala. 1994). Because Daniels does not provide this Court with a legal basis for reversing the trial court's judgment in this regard, this unsupported contention does not provide a ground for reversal."

314 So. 3d at 1225-26 (first and second emphases added).

Based on the foregoing, in Daniels the supreme court rejected the precedents that had relied on the Restatement (Second) of Torts § 343A and that had adopted a more liberal approach than the traditional, general rule as to the duty of a landlord regarding an open obvious danger. The Housing Authority contends that Daniels did more than that, however, essentially arguing that in unwinding the precedents relying on the judicial innovation of Restatement (Second) of Torts § 343A, the supreme court also intended to simultaneously overrule the longstanding exceptions to the traditional, general rule as to a landlord's duty. We disagree.

As the above discussion indicates, in Daniels the supreme court did not reject the notion that a landlord may owe a special duty to a tenant under certain circumstances, nor did the supreme court address whether it was rejecting other exceptions to the traditional, general rule that had existed before the Alabama precedents that had applied Restatement

(Second) of Torts § 343A. The plaintiff in Daniels does not appear to have adequately argued that any other exception or special duty applied to her claim, which involved merely a muddy sidewalk leading to the mail kiosk. Daniels did not expressly discuss Restatement (Second) of Torts §§ 360-61 or criticize the above-noted precedents discussing those sections as correct statements of Alabama law regarding exceptions to the general rule governing a landlord's duty as to an open and obvious danger.[7] Indeed, the supreme court referenced Hancock and Coggin as part of Daniel's inadequately made special-duty argument, describing the cases

---

[7]We acknowledge that in Daniels the supreme court expressly overruled Ex parte Howard ex rel. Taylor, 920 So. 2d 553, (Ala. 2005), which relied, in part, on § 360 and, in part, on § 343A, and this court's decision in McDonald v. Lighami Development Co., 962 So. 2d 847, 853 (Ala. Civ. App. 2006) (plurality opinion regarding a tenant's guest who fell on slippery stepping stones), which relied on § 360 and, in part, precedents reflecting the adoption of § 343A that were expressly overruled in Daniels for misstating the rule as to a landlord's duty, particularly Campbell v. Valley Garden Apartments, 600 So. 2d 240, 241 (Ala. 1992)). However, the supreme court overruled Ex parte Howard and McDonald as part of a string cite overruling "cases citing, quoting, and/or applying the Restatement (Second) of Torts § 343A," Daniels, 314 So. 3d at 1225, in other words, those cases were overruled as part of its decision correcting the misstatement of law that section had represented. Nowhere in the supreme court's discussion in Daniels does it purport to overrule exceptions that were not based on the duty described in § 343A.

as being cited by Daniels for "general propositions of law regarding a landlord's duty to maintain common areas," <u>see</u> 314 So. 3d at 1225; the supreme court gave no indication that those cases had incorrectly stated the law or had been overruled as part of the court's addressing the general rule as to a landlord's duty.

The present case, unlike <u>Daniels</u>, factually resembles <u>Coggin</u> regarding the type of danger at issue -- a missing stair handrail leading to the leased premises -- and involves the issue whether longstanding, supreme-court approved exceptions to the general rule as to a landlord's duty apply after the decision in <u>Daniels</u>, specifically the exceptions described in <u>Restatement (Second) of Torts</u> §§ 360-61. As discussed above, we cannot conclude that <u>Daniels</u> changed Alabama law as to those exceptions, and we must therefore apply <u>Coggin</u> as reflecting a proper statement of Alabama law. <u>See</u> Ala. Code 1975, § 12-3-16.[8]

---

[8]The parties did not discuss the Alabama Uniform Residential Landlord and Tenant Act ("the Act"), Ala. Code 1975, § 35-9A-101 et seq., in their arguments to the trial court or this court. The Act generally became effective on January 1, 2007. <u>See</u> § 35-9A-601. The Act includes a remedial scheme, <u>see</u> § 35-9A-401 et seq., but it does "not create any duties in tort or causes of action in tort, nor does it deprive anyone of any causes of action in tort that may exist apart from this chapter." Ala. Code

2210486

In response to Wallace's argument, the Housing Authority suggests, for the first time on appeal, that the back-porch stair was not a common area, while continuing to contend that the classification of that stair is immaterial to the resolution of this case. This is essentially an attempt to assert an alternative ground for affirmance based on a factual matter that is inconsistent with the Housing Authority's argument made in the trial court. In the trial court, the Housing Authority argued that, as long as the danger at issue is open and obvious, a landlord owes no duty to a tenant under Daniels, a common-area case, and that Coggin, also a common-area case, was no longer applicable. The Housing Authority made no attempt to argue and show that no factual dispute existed as to the status of the back-porch stair such that Coggin was

1975, § 35-9A-102(c). We must presume that the legislature was familiar with the decisions of our courts when it passed the Act and chose not to include provisions addressing tort liability, including the precedents applying the exceptions described in Restatement (Second) of Torts §§ 360-61 and Ex parte Gold Kist, which had declined to adopt Restatement (Second) of Torts § 343A. See, e.g., Carson v. City of Prichard, 709 So. 2d 1199, 1206 (Ala. 1998) ("The Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute.").

inapplicable.[9] Thus, the burden did not shift to Wallace to respond with an evidentiary submission or argument as to that issue. See Prince, supra; see also Hathcock Roofing & Remodeling Co. v. Compass Bank, 50 So. 3d 1097, 1101 (Ala. Civ. App. 2010) (noting that due process constraints do not permit the affirmance of a summary judgment on an alternative, unasserted ground as to the adequacy of the plaintiff's evidence to establish his or her claim). Under the circumstances, we cannot agree that the Housing Authority demonstrated that no disputed material fact existed as to the status of the back-porch stair such that the

---

[9]The Housing Authority's evidentiary submissions were directed to the issue whether the danger at issue was open and obvious, not the status of the back-porch stair itself. The Housing Authority did not submit a copy of its lease with Wallace or an affidavit from a representative of the Housing Authority averring that the back-porch stair belonged only to Wallace under the lease and that the Housing Authority had no control over that area. Also, Wallace did not admit in his deposition that he had been granted the exclusive right to use or control the back-porch stair or that the Housing Authority, which obviously had control over the Knoxville Homes apartment complex to the extent it had not been granted to someone else, had not retained control over the back-porch stair. Instead, the record includes a picture of the back-porch stair to Wallace's apartment and Wallace's testimony regarding his knowledge that the railings were missing, the Housing Authority's commitment to repair the railings, and its subsequent repair of the railings.

2210486

above-discussed precedents applying the principles from <u>Restatement (Second) of Torts</u> §§ 360-61 discussed in <u>Coggin</u> were inapplicable and that the Housing Authority was entitled to a judgment as a matter of law.

Based on the foregoing, the trial court erred in relying on <u>Daniels</u> and rejecting <u>Coggin</u> in determining whether the Housing Authority was entitled to a summary judgment on the ground that it owed no duty to Wallace because the missing back-porch-stair railing was an open and obvious danger.  The judgment is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Moore, J., concur.

Hanson, J., dissents, with opinion, which Fridy, J., joins.

2210486

HANSON, Judge, dissenting.

I respectfully dissent. On appeal, Harold Wallace argues that the Restatement (Second) of Torts § 360 (Am. L. Inst. 1965), and Coggin v. Starke Bros. Realty Co., 391 So. 2d 111 (Ala. 1980), are controlling in this case and that Daniels v. Wiley, 314 So. 3d 1213 (Ala. 2020), is factually distinguishable from his claims for alleged injuries that he suffered as a result of a fall while descending the back-porch stairs of his apartment operated by The Housing Authority of the City of Talladega ("the Housing Authority").

I disagree that Coggin and the Restatement (Second) of Torts § 360 (Am. L. Inst. 1965), are controlling in this case. The issue presented in Coggin is whether substantial fact issues existed as to the landlord's duty, the breach thereof, and the injury proximately caused by the alleged breach. When addressing the issue presented in Coggin, our supreme court cites Restatement (Second) of Torts § 360 (Am. L. Inst. 1965), in explaining the general law that tenants are considered invitees of the landlord while utilizing the common areas of the landlord's

property. However, in Coggin, our supreme court's analysis does not address "open and obvious" conditions.

The issue presented in this case is whether the Housing Authority owed any legal duty to Wallace because the lack of handrails on the back porch stairs created an "open and obvious" condition that was known to Wallace, which is the same question presented in Daniels. Similar to the tenant in Daniels, Wallace asserts that "the duty owed by the owner or occupier of a premises is to protect an invitee from hidden defects that are unknown to the invitee and that would not be discovered by the exercise of ordinary care" and that "even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect."

In support of his contention, Wallace cites Campbell v. Valley Garden Apartments, 600 So. 2d 240 (Ala. 1992), and Turner v. Dee Johnson Properties, 201 So. 3d 1197 (Ala. Civ. App. 2016), which, he says, hold that, in a premise-liability case, even if a tenant/invitee knows of the open and obvious danger that causes the injury, the landlord may still be liable for damages if the landlord knows of the danger and should have

anticipated the harm created by the danger. He reasons that the "evidence bearing on the defense of 'open and obvious danger,'" presents genuine issues of material fact which are created for the jury to resolve.

Notably, our supreme court in Daniels overruled Turner, Campbell, and other cases citing, quoting and/or applying the Restatement (Second) of Torts § 343A (Am. L. Inst. 1965). Specifically, our supreme court stated that it had explicitly recognized in Sessions v. Nonnenmann, 842 So. 2d 649 (Ala. 2002), that the law holding that a landlord has a duty to eliminate open and obvious dangers or to warn an invitee of such dangers if the invitor "should anticipate the harm" is not the law in Alabama. Daniels, 314 So. 3d at 1224-25.

Applying Daniels to the facts of this case and viewing the evidence in a light most favorable to Wallace, as we are required to do, the lack of handrails is an "open and obvious" danger. A condition is "open and obvious" when it is "known to the [plaintiff] or should have been observed by the [plaintiff] in the exercise of reasonable care. " Quillen v. Quillen, 388 So. 2d 985, 989 (Ala. 1980)." Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1194 (Ala. 2002). The evidence that the lack of handrails on

the stairs was open and obvious danger is undisputed. Wallace agreed that the lack of handrails on the stairs created an open and obvious danger, and he admitted that he appreciated the danger created by the lack of handrails when he testified in his deposition that he alerted the Housing Authority of the lack of handrails. Browder v. Food Giant, Inc., 854 So. 2d 594, 596 (Ala. Civ. App. 2002) (holding danger was open and obvious when invitee admitted that she was not paying attention to where she walked). Accordingly, I must respectfully dissent.

Fridy, J., concurs.